IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAFAEL SANCHES, JR., <br><br> Petitioner <br><br> vs. <br><br> MICHAEL R. CLARK, <br><br> Respondent | Case No. 1:18-cv-00100 (Erie) <br><br> RICHARD A. LANZILLO <br> UNITED STATES MAGISTRATE JUDGE <br><br> MEMORANDUM OPINION AND <br> ORDER ON PETITION FOR <br> HABEAS CORPUS <br><br> ECF No. 1 |

I. Introduction

Petitioner Rafael Sanches, Jr., (Sanches), a prisoner currently confined at the State Correctional Institution at Albion (SCI-Albion) in Albion, Pennsylvania, has filed a pro se Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1). He raises two grounds for relief: the ineffective assistance of his plea counsel, and the invalidity of his guilty plea. For the reasons explained below, the Court denies the Petition and denies a certificate of appealability.

II. Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. That provision allows a federal court to grant a state prisoner the writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution ... of the United States." 28 U.S.C. § 2254(a). It is Sanches' burden, as

petitioner, to prove he is entitled to the writ. *Id.*; *see, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).[1]

The parties have consented to the jurisdiction of a United States Magistrate Judge in this case, including the entry of a final judgment. *See* ECF No. 15; ECF No. 16; *see also* 28 U.S.C. § 636(c).

III. Factual Background and Procedural History[2]

The factual background and procedural history in this matter were summarized by the Pennsylvania Superior Court on Sanches' direct appeal:[3]

> On or about March 22, 2013, a Confidential Informant ("CI") provided information to the City of Erie police that there was going to be a delivery of 10.6 pounds of marijuana to the CI's home at 823 Washington Place in Erie later that same day. According to the CI, Appellant and a co-conspirator, Ricardo Melendez–Angulo, were to deliver the marijuana. Appellant would be driving a blue Chevrolet Impala.
>
> The police set up surveillance and observed Appellant drive a blue Impala to the rear of the CI's residence. Ricardo Melendez–Angulo, who owned the vehicle, was in the passenger seat.

---

[1] Sanches filed a Notice of a Change of Address with this Court on August 27, 2018, which suggested his place of residence was no longer SCI-Albion. ECF No. 13. This Court confirmed that status by using the Pennsylvania Inmate Locator Service, which also revealed that Sanches is no longer in state custody. Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides: "If it plainly appears from the petition or any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." *See, e.g., Patton v. Fenton*, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979). Thus, given Sanches' change of address, and lack of search results for his name on the Inmate Locator Service, it appears as if his petition may be moot. But as the Supreme Court explained, a parolee can challenge his conviction by a habeas petition. *See Jones v. Cunningham*, 371 U.S. 236 (1963). The Supreme Court considered the parolee in "custody" under § 2254(b) because "the custody and control of the Parole Board involve significant restraints on petitioner's liberty ... which are in addition to those imposed by the State upon the public generally." *Id.* at 242. *See also Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 509 (1982) (quoting *Jones*). According to his Petition, Sanches was sentenced to serve forty-eight (48) months of probation following his incarceration. ECF No. 1, p. 1. Assuming the date of his change of address as his release date (nothing in the record suggests otherwise), Sanches is on probation and his Petition is not moot.

[2] Respondents filed hardcopies of documents filed with the Court of Common Pleas in Petitioner's underlying state criminal case at docket CP-25-CR-0001914-2013, ECF No. 11. Those documents are indexed and numbered 1 through 53 and this Court will cite them as "SCR No. \_\_\_\_\_." When available, specific page numbers will be indicated.

[3] The facts found by the state courts are presumed correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.").

> The vehicle was seized and towed to the Erie Police Department. A
> search warrant was obtained and the vehicle was searched with the
> aid of a drug-sniffing dog. In the trunk of the vehicle, the police
> found a garbage bag containing a box of sandwich bags, a box of
> one-gallon zip-lock bags, a digital scale and eleven one-gallon bags
> each containing approximately ten and one-half pounds of marijuana,
> with a street value of $24,600 to $49,208.
>
> Appellant was charged with one count each of Criminal Conspiracy
> (to commit Possession with Intent to Deliver Marijuana); Possession
> with Intent to Deliver; Possession of a Controlled Substance;
> Possession of Drug Paraphernalia; and Criminal Use of
> Communication Facility (use of cell phone to arrange a drug
> delivery).

*Commonwealth v. Sanches*, 2015 WL 6554597, *1 (Pa. Super. Ct. Sept. 17, 2015). Sanches and the Commonwealth entered into a negotiated plea agreement by which Sanches would plead guilty to all five counts. *Id.* at *2. The Commonwealth then agreed to reduce the weight of the marijuana to 9.9 pounds for sentencing purposes and to waive the mandatory minimum sentence at Count Two, Possession with Intent to Deliver. *Id.* Sanches pleaded guilty to the five counts on January 15, 2014. *Id.* Sanches was sentenced as follows:

| Count | Sentence | Comment |
| --- | --- | --- |
| Count 1 | 15 to 30 months incarceration | |
| Count 2 | 15 to 30 months incarceration | Consecutive to Count 1 |
| Count 3 | | Merged with Count 2 |
| Count 4 | 12 months' probation | Concurrent to Count 5 |
| Count 5 | 36 months' probation | Consecutive to Count 2 |

*Id.* The procedural history of Sanches' direct appeal is somewhat convoluted. Sanches filed a Notice of Appeal pro se. SCR 49. On direct appeal to the Pennsylvania Superior Court, he raised these issues:

> I. Did the court err or abuse its discretion when it determined that
> the CI's reliability was further enhanced by his admission, against
> interest, as to his recent involvement in a drug delivery taking into
> consideration the fact that the CI never gave past reliable
> information;[ ]only cooperated with police once they served a search

3

> warrant on his residence; and the specific information from the CI
> was not corroborated by an actual,[ ]controlled buy of drugs?
>
> II. Did the court err or abuse its discretion when it denied
> [A]ppellant's application to suppress all the physical [evidence] which
> was found in the car taking into consideration the fact that law
> enforcement officers in this case completely ignored the need to
> apply for an anticipatory search warrant although the facts present a
> textbook example of a case in which such a warrant would be
> appropriate; and where the Affidavit of Probable Cause is further
> silent as to the reliability of the CI?
>
> III. Did the court err or abuse its discretion by not merging Count 1,
> [ ]Criminal Conspiracy (to commit possession with intent to Deliver)
> with Count 2, Possession with Intent to Deliver for sentencing
> purposes?
>
> IV. Did the court err or abuse its discretion by determining that the
> Commonwealth established a prima facie case because all relevant
> information the police received was from the CI who did not testify
> at the preliminary hearing taking into consideration the fact that the
> only Commonwealth witnesses were two police officers whose
> testimony was based solely on unreliable hearsay information
> supplied by the CI?

*Commonwealth v. Sanches*, 2015 WL 7587335, *2 (Pa. Super. Ct. Feb. 18, 2015) (citing Sanches' Brief).

The Superior Court did not resolve these issues but remanded Sanches' case to the Court of

Common Pleas based on that Court's failure to appoint appellate counsel for Sanches. *See*

*Commonwealth v. Sanches*, 2015 WL 7587336, *2-3 (Pa. Super. Ct. Feb. 18, 2015) (citing *Commonwealth v.*

*Kent*, 797 A.2d 978, 980 (Pa. Super. Ct. 2002).

Thereafter, the Erie County Public Defender's Office was appointed as Sanches' appellate

counsel. SCR 64. Assistant Public Defender Emily Merski filed a brief on Sanches' behalf pursuant

to *Anders v. California*, 386 U.S. 738 (1967) and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).[4]

Counsel also filed an application to withdraw representation. *Commonwealth v. Sanches*, 2015 WL

---

[4] An "*Anders*" brief, and its state court counterpart, is a brief filed by a criminal defendant's court-appointed attorney indicating their desire to withdraw from the case because the appeal is baseless. *See, e.g., United States v. Tirado*, 2020 WL 207131 (3d Cir. Jan. 14, 2020); *Commonwealth v. Madison*, 2020 WL 211535 (Pa. Super. Ct. Jan. 14, 2020).

4

6554597, at *2. The Commonwealth informed the Superior Court that a response was unnecessary and declined to file a responsive brief. *Id.* Thus, the sole issue before the Superior Court on direct appeal was "Whether the appellant's sentence is manifestly excessive, clearly unreasonable and inconsistent with the objectives of the Sentencing Code." *Id.* (citing Appellant's *Anders* brief).

The Superior Court affirmed Sanches' sentence on September 17, 2015. *Id.* at *4. The Superior Court noted that Sanches "did not raise his current challenge in a post-sentence motion, or at the time of sentencing." *Id.* Thus, that Court was "constrained to conclude that [Sanches'] issue is waived, and we are precluded from addressing the merits of this issue on appeal." *Id.* The Superior Court did undertake an independent review of the record and concluded that there were no non-frivolous issues meriting review. *Id.* (citing *Commonwealth v. Harden*, 103 A.2d 107, 111 (Pa. Super. Ct. 2014)). Thus, the Court granted counsel's motion to withdraw and affirmed Sanches' sentence. Sanches did not petition the Supreme Court of Pennsylvania for allowance of appeal.

On November 16, 2015, Sanches petitioned, pro se, under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C. S. A. § 9545, *et seq.* Counsel was appointed and a supplemental petition was filed on January 4, 2016. The trial court held an evidentiary hearing on March 11, 2016, and issued a notice that it intended to dismiss Sanches' PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 907. The petition was dismissed by order on July 27, 2016, and Sanches timely filed a Notice of Appeal pro se. Because the Superior Court found "no indication in either the record or court docket suggesting that [PCRA] counsel withdrew his appearance or that [Sanches] affirmatively waived his right to counsel," it remanded the matter for the trial court to "either direct counsel to continue representation, allow counsel to withdraw and appoint new counsel, or conduct a *Grazier* hearing if [Sanches] wishes to proceed pro se." *Sanches*, 2017 WL 6044250 *1 (Pa. Super. Ct. Dec. 6, 2017) (citing *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998)). The trial court appointed

5

new counsel to represent Sanches and a notice of appeal, *nunc pro tunc*, was filed with the Superior Court. *Id.*

Sanches presented two issues to the Superior Court:

> 1. [Did] the lower court commit[ ] legal error and abuse[ ] its discretion in failing to find that the guilty pleas as entered were invalid in that the commonwealth used the representation that it would agree to waive the mandatory minimum sentence as an inducnement [sic] to accept the plea agreement wherein the commonwealth lacked any legal authority to pursue the mandatory minimum sentence given the issuance of the supreme court decision in *United States v. Alleyne*?
>
> 2. [Was] the Appellant [ ] afforded ineffective assistance of counsel in that defense counsel failed to properly advise and counsel the appellant as to the terms of the plea agreement in the conte[x]t of the holding of *United States v. Alleyne* and defense counsel also served to induce the entry of guilty pleas by representing that the waiver of the mandatory minimum was of significance and constituted a favorable element of the plea agreement?

*Id.* at *2 (citing Sanches' Brief). The Superior Court first found Sanches' stand-alone claim challenging the validity of his guilty plea to be waived. *Id.* In Pennsylvania, to preserve a challenge to a guilty plea, a defendant must "either make a timely objection during the plea colloquy or raise the claim in a post-sentence motion." *Id.* (citing *Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1246 (Pa. Super. Ct. 2002)). Because Sanches did not object to the guilty plea during this colloquy with the sentencing court or otherwise raise the claim in a post-sentence motion, the Superior Court considered the challenge waived. *Id.* at *2-3.

Sanches' second issue challenged his guilty plea "as a function of plea counsel's ineffectiveness," and the Superior Court addressed this issue on the merits. *Id.* at *3. The Court concluded that Sanches failed "to establish that [trial] counsel had no reasonable basis upon which to recommend pleading guilty," given that "the Commonwealth offered not only to waive the mandatory minimum sentence ... but also to decrease the weight of marijuana charged in the information to an amount that would reduce the offense gravity score [thereby resulting in a 12-

6

month decrease in Sanches' standard sentence range]." *Id.* Thus, the Superior Court affirmed the trial court's decision on post-conviction relief. *Id.* Again, Sanches did not petition for allowance of appeal with the Supreme Court of Pennsylvania.

Sanches then petitioned for habeas relief under § 2254 on March 28, 2018. ECF No. 1. He also filed a Brief in support of his petition. ECF No. 2. On June 18, 2018, the Respondent filed an Answer. ECF No. 9. The Respondent also filed the state court record with the Clerk's Office. ECF No. 11. Sanches did not file a Reply. Sanches' petition is now ripe for disposition.

III. Legal Standards

Various standards must be met before the Court can review the merits of Sanches' habeas petition.

A. Standard for Issuance of a Writ of Habeas Corpus

1. Has the petition presented cognizable habeas claims?

28 U.S.C. § 2254(a) commands that habeas relief may be afforded to a state prisoner only when his or her custody violates federal law. *Wilson v. Corcoran*, 562 U.S. 1, 6, (2010). Sanches' ineffective assistance of counsel claim and the claim related to the validity of his guilty plea are cognizable in habeas proceedings. *See, e.g., Ellington v. Overmyer*, 2017 WL 4800473, *9 (M.D. Pa. Oct. 3, 2017) (ineffective assistance of counsel); *Scarborough v. Metzger*, 2018 WL 4344984, *1 (D. Del. Sept. 10, 2018) (citing *Brady v. United States*, 397 U.S. 742 (1970) (involuntary guilty plea)). Thus, he has presented cognizable claims.

2. Exhaustion and Procedural Default

A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A). This means that a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware*

*Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This ensures that the state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Nor may a federal court grant a habeas petition if the state court's decision rests on a violation of a state procedural rule, even if the claim is properly exhausted. *Johnston v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)). If a federal court finds that a claim has been procedurally defaulted, the default may be excused only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

Sanches raised the ineffective assistance of counsel claim to the PCRA court and the Superior Court on PCRA appeal. *See* ECF No. 12-2. Thus, he has exhausted this claim for purposes of federal habeas corpus relief under § 2254. *See Rhone v. Pennsylvania*, 2019 WL 4143452 *8 (W.D. Pa. June 17, 2019) ("PCRA issues presented to the Pennsylvania Superior Court which have been denied in a final order are considered exhausted …").

His more general, stand-alone challenge to the validity of his guilty plea, however, is procedurally defaulted. On appeal of the denial of the PCRA petition, the Superior Court held that Sanches "challenges the validity of his guilty plea as a stand-alone claim, discrete from the related ineffective assistance of counsel claim." *Commonwealth v. Sanches*, 2017 WL 6044250, *2. Finding this issue to be waived, the Court held:

> To obtain post-conviction relief, a petitioner is required to plead and prove that "the allegation of error has not been previously litigated or waived." 42 Pa. C. S. § 9543(a)(3). An issue is waived if it could have been raised before trial, at trial, on direct appeal, or in a prior state

8

> post-conviction proceeding. 42 Pa. C. S. § 9544(b). In order to
> preserve a challenge to his guilty plea, a defendant must either make a
> timely objection during the plea colloquy or raise the claim in a post-
> sentence motion. *Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1246
> (Pa. Super. 2002) (instructing that claim challenging validity of guilty
> plea waived where appellant neither objected during colloquy nor
> challenged it in post-sentence motion); Pa. R. Crim. P. 720.

*Id.* The Superior Court observed that Sanches failed to object to his guilty plea during his colloquy and did not file a post-sentence motion. *Id.* Thus, because Sanches brought this claim for the first time on collateral review, the Court considered it waived under 42 Pa. C. S. § 9544(b). *Id.*[5]

A federal court ordinarily may not review a claim on the merits if the state court's denial of relief is based on a procedural default that rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Such a scenario happened in this case when the Superior Court determined that the stand-alone claim was waived pursuant to Pennsylvania's waiver rule, 42 Pa. C.S. § 9544(b). Relevant here, the Third Circuit has held the waiver rule in § 9544(b) to be an independent and adequate state ground for the purpose of the procedural default doctrine. *See Patton v. Sup't Graterford SCI*, 2017 5624266, at *1 (3d Cir. 2017) (denying a certificate of appealability because, *inter alia*, "[j]urists of reason would not disagree that Patton's remaining claims are procedurally defaulted as the state court's reliance on 42 Pa. Cons. Stat. § 9544(b) provides an independent and adequate ground to support the judgment.") (citation omitted).

Sanches can overcome this procedural default by demonstrating either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause and prejudice, the petitioner must show some objective factor external to the

---

[5] This provision states that "For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa. C. S. § 9544(b).

9

defense that impeded counsel's efforts to comply with some state procedural rule. *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate a fundamental miscarriage of justice, a habeas petitioner must typically show actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-26 (1995). Although Sanches acknowledges this standard, he does not allege that this claim meets either exception. *See* ECF No. 2, pp. 2-3. In trying to overcome the procedural default, Sanches argues that

> Moreover, the Superior Court's synopsis that 'We find this issue is waived' is imperfect because the certified record clearly depicts that Petitioner has established that [h]is claims have not been previously litigated or waived. As previously noted, Petitioner vehemently denounces that he was represented by Attorney Hackwelder at the plea proceeding and Attorney Merski on direct appeal in which both counsel's [sic] failed to present the *Alleyne* issue to the Lower Court as Petitioner requested them to do. That is to say, Petitioner finds as an initial matter [h]is *Alleyne* claim is not procedurally defaulted – Petitioner fairly presented his constitutional claim to the Lower Court through 'First' PCRA counsel, William John Hathaway, Esquire, at the 'first' available opportunity to challenge the stewardship of prior plea/appellate counsel – in his 'first' PCRA petition. For this reason, Petitioner's ineffectiveness claims are not waived.

*Id.* at pp. 26-27 (emphasis and citations omitted). He mistakenly argues that by raising claims of ineffectiveness in his PCRA petition, he has somehow preserved his more general challenge to this guilty plea. Not so. As the Superior Court observed, such a challenge needed to be raised post-sentencing or on direct appeal, not in a PCRA proceeding.

Further, to the extent Sanches relies on *Martinez v. Ryan*, --- U.S. ---, 132 S. Ct. 1309 (2012) to save his stand alone claim from procedural default, that reliance is misplaced. *Martinez* only applies to defaulted claims of ineffective assistance of trial counsel. *See Davila v. Davis*, --- U.S. ----, 137 S. Ct. 2058, 2065 (2017) (declining to extend *Martinez* to defaulted claims of ineffective assistance of appellate counsel); *Maitland v. Gilmore*, 2019 WL 4194201 (M.D. Pa. Sept. 4, 2019); *Murray v. Diguglielmo*, 2016 WL 3476255, *4 (E.D. Pa. June 27, 2016) ("These claims do not involve ineffective

assistance of [trial counsel]. *Martinez* does not apply). Sanches' stand-alone claim is not one of ineffective assistance of trial counsel and thus is procedurally defaulted.

IV.    Merits of the Ineffective Assistance of Plea Counsel Claim

    A.     The AEDPA Standard

In enacting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress "significantly limited the federal court's power to grant a writ of habeas corpus." *Tolbert v. Ferguson*, 2019 WL 4677357 at *2 (E.D. Pa. Aug. 8, 2019). Under § 2254, as amended, federal courts in habeas cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

The standard for granting or denying a writ of habeas corpus is set out in the statute:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

    B.     The Standard for Ineffective Assistance of Counsel Claims

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1994), announced the test that a habeas petitioner must satisfy before a federal court could find that counsel failed to provide effective assistance under the Sixth Amendment. This same standard has been incorporated by Pennsylvania courts as the proper basis to consider challenges for ineffective assistance of counsel under the Pennsylvania constitution. *See Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987) (stating that Pennsylvania courts apply elements of the *Strickland* test to ineffective assistance of counsel claims). A Pennsylvania court's resolution of an ineffective assistance claim, therefore, is presumed

11

to apply clearly established federal law and is due the substantial deference required by 28 U.S.C. § 2254(d). *See, e.g., Munoz v. Palakovich*, 2006 WL 4705551, *11 (E.D. Pa. Nov. 20, 2006), *approved and adopted* as *Munoz v. Grace*, 2007 WL 2323134 (E.D. Pa. Aug. 10, 2007).

Under the two-prong *Strickland* test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. 466 U.S. at 688–96. To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To meet the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It is self-evident that counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court adopted the two-part standard in *Strickland* to evaluate ineffective assistance of counsel claims—like Sanches'—that arise out of the entry of a guilty plea. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 56. This is "nothing more than a restatement of the standard of attorney competence." *Id.* at 58. So then, plea counsel's representation must fall "within the range of competence demanded of attorney's in criminal cases" if it is to provide a basis for a knowing and voluntary plea. *See McMann v. Richardson*, 397 U.S. 759, 771 (1970).

If counsel's performance is deficient, the court must then determine whether the error affected the outcome of the plea process. *Hill*, 474 U.S. at 59. Thus, *Hill* restates *Strickland's* prejudice prong a bit differently. In the context of a guilty plea, the petitioner needs to show that

"there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. *See also United States v. Sanchez*, 2019 WL 5892786, *2 (M.D. Pa. Nov. 12, 2019). Furthermore, where a petitioner pleaded guilty, he must show not only that he would not have done so and instead went on to trial, but also that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

C. Discussion and Analysis

Sanches claims that his plea counsel was ineffective for allowing him to enter a plea of guilty which was based on the mandatory minimum sentencing enhancement under 18 Pa. C.S.A. § 7508. ECF No. 1, p. 6. Sanches argues that this violated the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013). More specifically, Sanches claims the plea-bargaining process was "tainted" because the Commonwealth dangled the possibility of a mandatory minimum sentence over him when such sentences were now required to be submitted to a jury, per the *Alleyne* decision. In other words, the Commonwealth bargained with a sentencing factor they no longer possessed. *See* ECF No. 2, pp. 14-15. Thus, Sanches claims, his plea counsel was ineffective for allowing him to plead guilty to a sentence that contemplated mandatory minimums, in violation of *Alleyne*. *Id.* at p. 14.

The Pennsylvania Superior Court addressed Sanches' claim of ineffectiveness on the merits. In Pennsylvania, "ineffective assistance of counsel in connection with a guilty plea will serve as a basis for PCRA relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v. Mosey*, 2020 WL 118615, *3 (Pa. Super. Ct. Jan. 10, 2020) (citing *Commonwealth v. Velazquez*, 216 A.3d 1146, 1149 (Pa. Super. Ct. 2019)). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice

was within the range of competence demanded of attorneys in criminal cases." *Velazquez*, 216 A.3d at 1149-50 (quoting *Commonwealth v. Wah*, 42 A.3d 335 (Pa. Super. 2012)).

Pennsylvania courts are presumed to apply clearly established federal law and the decisions of those courts are due the substantial deference required by 28 U.S.C. § 2254(d). *See, e.g., Munoz v. Palakovich*, 2006 WL 4705551, *11. The Superior Court applied the Pennsylvania test for ineffective assistance derived from *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). The Court observed that "[t]o succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him." ECF No. 2-2, p. 7 (quoting *Commonwealth v. Michaud*, 70 A.2d 800, 802 (Pa. Super. Ct. 2003)). This "*Pierce* Standard" has been found to be materially identical to the *Strickland* test. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). *See also Grant v. Wilson*, 2008 WL 2191834, *1 (3d Cir. 2008). Thus, the Superior Court did not apply a rule of law that contradicts established Supreme Court precedent and therefore its decision was not contrary to clearly established Supreme Court precedent. *See, e.g., Grant*, 2008 WL 2191834, *1; *Tyma v. District Atty. Of Allegheny Cty.*, 2019 WL 7207302, *8 (W.D. Pa. Dec. 27, 2019).

The only question here is whether the Pennsylvania Superior Court unreasonably applied the *Strickland* standard or otherwise based its decision upon an unreasonable factual determination.[6] That is, this Court must also analyze Sanches' ineffectiveness claim under the "unreasonable application" provision of 28 U.S.C. § 2254(d)(1). "Under that provision, the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to [Sanches'] ineffectiveness claim was objectively unreasonable, *i.e.*, the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*." *Werts*, 228 F.3d at 204.

---

[6] This Court's review is limited to the last state court decision to pass on the merits of a particular claim. *See Wright v. Vaughn*, 473 F.3d 85, 90 (3d Cir. 2006); *Hull v. Kyler*, 190 F.3d 88, 110 (3d Cir. 1999). Thus, the Court's review centers on the Superior Court's decision of December 6, 2017.

14

The question then is whether "the Pennsylvania Superior Court's determination that trial counsel rendered effective assistance was not an unreasonable application of *Strickland*." *Id.* Because the state courts addressed Sanches' claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA to those claims. The Supreme Court has explained:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Premo v. Moore*, 562 U.S. 115, 122—123 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). *Accord Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'") (citations omitted), *rejected on other grounds by*, *Dennis v. Sec'y, Pa. DOC*, 834 F.3d 263, 293 (3d Cir. 2016).

In its opinion rejecting Sanches' claim of ineffectiveness, the Superior Court found counsel's actions in recommending the plea reasonable. *Commonwealth v. Sanches*, 2017 WL 6044250, *3. The Superior Court found that counsel's actions in recommending the plea were reasonable given that "the Commonwealth offered not only to waive the mandatory minimum sentence for [possession with intent to distribute] but also to decrease the weight of marijuana charged in the information to an amount that would reduce the offense gravity score and, consequently, the standard range sentence ... by 12 months." *Id.* The Court noted that this weight reduction also reduced the

15

sentencing guideline for Sanches' related conspiracy charge. *Id.* Thus, Sanches' "sentencing exposure was significantly reduced independent of the Commonwealth's offer to waive the mandatory minimum, and counsel explained at the PCRA hearing that he based his advice in part on the benefits attendant to the reduction of the drug weight charged in the information." *Id.*

This was not unreasonable under *Strickland*. Plea counsel properly advised Sanches about the Commonwealth's offer and gave him professional advice concerning the strengths and weaknesses of the Commonwealth's case. Counsel explained: "I was trying to get Mr. Sanches the best plea possible, and then there was the final offer waiving the mandatory minimums and reducing the amount of drugs. And that what we --- I strongly encouraged Mr. Sanches to take it." March 11, 2016 PRCA Hearing Transcript, p. 20. Further, counsel noted that "I felt that that was a great deal for him. Based upon all the evidence that the Commonwealth had at the time of trial, I felt that there was a good chance we would not win the case and that he would be exposed to a heck of a lot more time than he would get had he taken the plea."[7] *Id.* at 21.

Nor was the Superior Court's treatment of the *Alleyne* issue an unreasonable application of *Strickland*. Under *Alleyne v. United States*, 570 U.S. 99, 116 (2013), the Supreme Court required that the "facts that increase mandatory minimum sentences must be submitted to the jury." *Id.* Because the *Alleyne* decision was handed down approximately five months before he was sentenced, Sanches argues that the Commonwealth lacked any authority to pursue a mandatory minimum sentence, yet "represented and cited as a basis for the plea agreement that they were agreeing to forego a sentencing factor that they did not possess." ECF 2, pp. 14-15. He claims that he "directly and explicitly" relied on the Commonwealth's relinquishment of any mandatory minimum sentence in

---

[7] Counsel testified that the evidence included "all the physical evidence that was found in the vehicle, they had the CI testifying, they had the co-defendant testifying, so in my estimation, and based upon my experience, I believed that he was facing a pretty tall order had he gone to trial." March 11, 2016 PRCA Hearing Transcript, p. 21.

16

exchange for his plea. *Id.* at 15. Sanches maintains that he was prejudiced by plea counsel's failure to recognize this error and thus, to advise him to reject the plea. *Id.*

The Superior Court noted, however, that "even considering the effect of *Alleyne*, which it must be said, was still unresolved by this Court in early interpretive decisions filed prior to the time counsel advised [Sanches] to plead, we conclude that counsel had a reasonable basis for advising [Sanches] to accept the Commonwealth's offer and plead guilty." *Commonwealth v. Sanches*, 2017 WL 6044250, *3. The Superior Court further noted that it had not definitively ruled that the Pennsylvania mandatory minimum statutes were unconstitutional in light of *Alleyne* until 2014, well-before Sanches' plea. *Id.* (citing *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. Ct. 2014)). And plea counsel testified that, at the time of Sanches' plea, Pennsylvania courts were still utilizing mandatory minimums when imposing sentences. March 11, 2016 PRCA Hearing Transcript, p. 21.[8] Given the unresolved impact of the Supreme Court's decision in *Alleyne* in the Pennsylvania courts at the time of Sanches' plea, the Superior Court's conclusion that counsel had a reasonable basis for advising Sanches to take the plea was not an unreasonable application of *Strickland*. Thus, Sanches is not entitled to relief from this Court on his claim of ineffective assistance of counsel. *See* 28 U.S.C. § 2254(d).

V.  Conclusion

For these reasons, the Petition for Writ of Habeas Corpus relief filed by Petition Rafael Sanches is DENIED and DISMISSED with prejudice.

---

[8] Plea counsel was asked "Okay. Based on your recollection of what was going on after *Alleyne*, was the Commonwealth or sentencing judges still utilizing mandatory minimums with special verdict forms and things of that nature to meet the law of elements going to the jury?" Counsel answered: "Yes, and that's part of the reason why we came to that conclusion, because they were still being imposed. And when it was finally --- we agreed that there would be no mandatory minimums and the weight was reduced, I felt that that was a great deal for him ... I felt that there was a good change we could not win the case and that he would be exposed to a heck of a lot more time than he would get had he taken the plea." March 11, 2016 PRCA Hearing Transcript, p. 21.

17

VI.  Certificate of Appealability

Because Sanches has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should not issue. There is no basis for holding that "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and quotations omitted).

Entered this 3rd day of February, 2020.

_____
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE